Curia, per

O’Neall, J.
Where the grounds of appeal are not noticed in this opinion, they are considered by the Court as sufficiently answered, explained or ruled, by the report of the Judge below.
The third and fourteenth grounds may be considered together. For they both in fact relate to the amendment of the schedule. If the fourteenth ground was right, it would be no more than this: the jury would be permitted to make for the defendant, the amendment which he could not do.
This would be giving to them powers which I never supposed to rest any where. But, without wasting words about it, the rule may be stated at once, that the jury cannot inquire beyond the issue ; that, in this case, was, is the defendant’s schedule true or false (a) The ground admits that it was, but insists that that which was false in fact, the jury should find true in fact. This they had no right to do. There is no doubt that the defendant’s schedule is amendable within the discretion of the Circuit Court, (b) But I do not understand by discretion, when used as a law phrase, the power of doing as *the Judge’s caprice may direct. He is invested with discretionary powers over many matters of practice, to subserve the purposes of justice. But in reference to the subject now before us, the discretion of the Circuit Judge was never intended to help a fraudulent debtor out of the meshes of the net into which either his fraud or folly may have cast him. Here I never could perceive that the defendant had “inadvertently, ignorantly or by mistake,”, omitted to insert in his schedule the property alleged in the suggestion to belong to him. To say that, this was the fact, would be to say that a debtor did not know of what his estate consisted. Me has, according to the verdict of the jury, left out of his schedule all of his most valuable property and rights. When detected in this, and he is about to be saddled with the consequences, he begs to be secured from them by amendment. It is true “that ceasing to do evil and learning to do well,” in the sublime book of holy inspiration, with which the defendant ought to be acquainted, is the condition on which the penalties of the moral world are waived. But here, he who wilfully, or with the means of knowledge within his reach, does wrong, falls under that legal maxim, “vjnoranta Jeejis reminen exemat,” and must'abide the consequence. This is the case with the defendant. He made the issue, that he had presented a schedule of his whole estate ; this was verified by the solemn sanction of his oath ; if in fact he did not return a tithe of his estate, how can he complain, that this omission is set down to any thing else than *106 ignorance of the fact ? The predicate of the amendment being thus removed, the defendant has nothing to stand upon.
Bnt, I go still further ; an amendment ought never to be made when it will surprise or delay the other party. That was peculiarly the case. They had traversed the defendant’s schedule, and specified its falsehood, and at the moment of trial, when they are waiting to prove their allegations, the defendant asks by amendment to destroy the whole issue. This is going to defeat the ends of justice, and cannot be allowed In general, a schedule is amendable where it is apparent that the omission resulted from “ ignorance, inadvertence or mistake.” The usual illustration is, where a man leaves out some trifling article of property, to which his attention *was not turned ; in such a case, he may well be supposed to have accidentally omitted it.
To the fourth ground the following answer may be given : under the Act of 1833, (Acts. p. 43,)(a) if the defendant be “ accused of fraud,” it is to be tried by jury. (b) Whenever the right of a prisoner to be discharged is resisted, on the ground of fraud, there is nothing which requires that there should be any showing on oath. But still if the result of the allegation would be to delay the hearing of the debtor’s application then I have no doubt that the Circuit Judge, in the exercise of a sound discretion, might require the creditor to verify his accusation by affidavits. If there was any merit in this objection, it ought to have been taken when the plaintiffs appeared before my brother Evans and objected to the defendant’s discharge, and were permitted to file their suggestion. When the case was called for trial it was too late to make the objection.
The eighth and twelfth grounds may be considered together. The prison bounds’ Act, in the 7th sec. (P. L. 457,)(c) provides that no prisoner shall be discharged “who shall have, within three months before his or her confinement, or at any time since, paid or assigned his estate, or any part thereof, to one creditor, in preference to another, or fraudulently sold, conveyed or assigned his estate to defraud his creditors.” According to my reading, these two parts of the same sentence are distinct, and have not the same qualification of time, (d) The limitation of three months applies solely to undue preference. It was reasonable that there should be some limitation in this behalf. For a man might be allowed, at a period when insolvency was not apparent and manifest, to do an act which at a later day it would be altogether wrong to permit. But if a man sells or conveys his estate to defraud his creditors, his conveyance is most commonly inoperative, and the estate thus sold or conveyed, remains his against his creditors, and its omission in his schedule might, when he was wholly silent on the subject, subject him to the penalties of a false schedule : but where the conveyance might be good in the hands of the alienee, still the defendant has, in thus putting the property out of the reach of his creditors, been guilty of a fraud on them, whid is equally criminal whether it be within ’Three months or J at a more distant day. The concluding part of the section shows that this is the true construction. It provides “ whenever a prisoner shall be accused by the plaintiff, or his agent, of fraud, or of his having *107 given an undue preference to one creditor to the prejudice of the plaintiff, or of having made a false return, or of having gone without the prison walls, or prison rules, as the case may be, it shall be lawful for the Judge or Justice before whom the prisoner is brought, to direct a jury to be impanneiled and sworn to determine the fact ” From these provisions, referring to the former ones, being so perfectly distinct, we are very properly brought to conclude that a fraudulent sale or conveyance, and a fraudulent preference, are two wholly distinct things, and that the limitation of time was intended to attach to the preference of one creditor to another.
The fifteenth ground, as explained in the report, is without foundation. The instruction given by the presiding Judge to the jury, enabled them to understand fully the facts on which they were to pass and the law applicable to them.
If, in point of fact, Eliza Smith, or Barrett, was the wife of the defendant, then there was certainly no doubt that the deeds could not be supported. For in this point of view they were voluntary. That there was evidence that they were man and wife, cannot be denied, unless it be that acknowledgments of each other as such, and living together and cohabiting, be no evidence of such a fact ; no one will hardly venture that far. That there was conflicting and opposing evidence, makes the very case to be resolved by the verdict of a jury. And if the case depended upon this question, I should say that they ought to be regarded as man and wife.
But if it is conceded that they never were married, and that Eliza was Judah’s concubine, then I think the case is also free from difficulty. If the deeds were executed to procure a continuance of cohabitation, then it is beyond all doubt that they are void, (a) I think the evidence would even justify this conclusion. For the parlies lived and cohabited together after the execution of the deeds, and had the common enjoyment of the property.
If, however, the deeds stand on the footing of voluntary conveyances to a kept mistress, as the counsel seems to *desire, still the verdict could not be otherwise than it is. That a man, not in debt, may do any act of folly he chooses, is generally unquestionable ; and if that had been Barrett’s position, these deeds might have been supported. But at every moment of time during his intercourse with Eliza, he was more or less in debt. He retained the possession of the property to the moment of acknowledged insolvency. How a voluntary conveyance, thus situated, is to be supported, I am at a loss to conceive, (b) Our cases as to the rights of creditors, as against voluntary donors, must all be wrong, or these deeds are void.
If it were true, as is contended, that the defendant made these convey-to Eliza, for her services as house keeper, or for any other debt, still his possession of the property would render the conveyances fraudulent.
The seventeenth ground cannot avail the defendant. For if Mr. Cohen paid the consideration acknowledged by Barrett, for the houses and lots and slaves, his deeds ought not to be regarded as fraudulent. Yet it may be, as the plaintiff alleged, that in fact no money was paid. In this respect, there was evidence from which the jury might have *108 concluded that the plaintiff’s allegation was true, and if so, then the defendant is rightfully convicted of fraud under this head. If they were bona fide, the defendant had $21,650, their proceeds, for which he had failed to account, and in this respect he was guilty of having made a false schedule. The jury have found both that the deeds were fraudulent and that the defendant had the consideration, $21,650, which was omitted in his schedule. These are inconsistent findings. But reject either, and the defendant is convicted of fraud. It is, therefore, unavailing to the defendant. As to the western and southwestern lands, it was plain that these, to a large amount, were omitted in the schedule, and as to them, the falseness of his schedule was palpable.
Note. — This case was argued before the present Reporter was elected, and postponed by the Court for further consideration, which will account for the omission of argument of counsel.
Yeadon, for the motion. II. A. JDe Saussure, contra.
In answer to the twentieth ground, it would be enough to refer to the return of the subpoena duces tecum. It does not require the person thus summoned, to testify, but to bring into Court a paper which the party needs. When this is done, nothing further is required. In the case of the Treasurer vs. Moore, (3 Brev. 550,) it was ruled that before going into *trial, the plaintiff had the right to have a J return made to the subpoena duces tecum. This shows that the party need not put the person so summoned on the stand as a witness.
The motion is dismissed.
The whole Court concurred.

 1 Rich. 463. An.

 Ante 33. An.

 6 Stat. 492, § 1. An.

 Blease vs. Farrow, 9 Rich. 49. An.

 5 Stat. 78. An.

 7 Rich. 473; 2 Strob. 139. An.

 Harp. 201. An.

 2 Bail. 123. An.